IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM D. BUSH,<br><br>      Plaintiff,<br><br>v.<br><br>TRITON SYSTEMS OF DELAWARE INC,<br><br>      Defendant. | C.A. No. 20-599-LPS |

## MEMORANDUM ORDER

Plaintiff William D. Bush sued Defendant Triton Systems of Delaware, LLC ("Triton") for alleged violations of the antitrust laws and for breach of a mutual confidentiality agreement. (*See generally* D.I. 2 ("Compl."); D.I. 20 ("Am. Compl."))[1] Pending before the Court is Triton's motion to dismiss Bush's amended complaint. (D.I. 21) The Court previously granted Triton's motion to dismiss Bush's original complaint but gave Bush, who proceeds *pro se*, an opportunity to file an amended complaint. (D.I. 19 at 1, 12) Having reviewed the latest round of briefing (D.I. 22, 23, 24, 25) and other materials submitted by the parties (D.I. 5, 12), **IT IS HEREBY ORDERED** that Triton's motion to dismiss the amended complaint (D.I. 21) is **GRANTED**, and this case will be **CLOSED**.

---

[1] Like the caption of the original complaint, the caption of the amended complaint identifies "Triton Systems of Delaware Inc" as the defendant. (Compl. at 1; Am. Compl. at 1) After filing the original complaint, Bush confirmed that he intended to name Triton Systems of Delaware, LLC. (D.I. 16 at #212) Like the original complaint, the amended complaint suggests that Bush wanted to name Does 1 through 55 as defendants, although they do not appear in the caption. (*See* Am. Compl. ¶¶ 6, 7; *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . .")) While the amended complaint generally suggests that Does 1 through 55 are affiliates of Triton, the Court still cannot discern any additional information about who those individuals may be. Accordingly, the Court treats Triton as the sole named defendant, as it did with the original complaint. (*See* D.I. 19 at 1 n.1)

1

## BACKGROUND

This case involves Bush's work in the automated teller machine ("ATM") industry.[2] Bush filed his original complaint on April 30, 2020 (D.I. 1), and Triton subsequently moved to dismiss (D.I. 10, 11). After full briefing, the Court issued a memorandum order in March 2021 that identified deficiencies in the original complaint, granted Triton's motion to dismiss, and gave Bush an opportunity to correct those deficiencies by filing an amended complaint. (*See generally* D.I. 19)

Much of Bush's amended complaint is materially indistinguishable from the original complaint. Like the original complaint, the amended complaint alleges (among many other things) that, "through means of illegal monopolization of industry, theft of trade secrets, and via unlawful use of interstate mail and wires, [Triton] conducted ongoing schemes to wrongfully restrict, block and misappropriate the income derived from trade secrets and financial assets of the Plaintiff in violation of the Sherman-Clayton Acts." (Am. Compl. ¶ 71)

The amended complaint also contains three new "Court Identified Amendment Responses." (*Id.* at 13-22) The first responsive section begins by addressing Bush's claim under Section 1 of the Sherman Act. Bush asserts that the "combination of agreement and conspiracy between the Defendants," including their adherence to "associated network rules,"[3] results in "unreasonable restraint of trade within the financial services industry at large." (*Id.* ¶ 86)

---

[2] The factual allegations in the amended complaint are highly similar to those in the original complaint. The Court's previous memorandum order contains an overview of factual allegations that are common to both complaints. (*See generally* D.I. 19 at 2-5) In this order, the Court focuses predominantly on Bush's new allegations.

[3] This allegation refers to rules issued by nonparties Visa, Inc. ("Visa") and Mastercard International Inc. ("Mastercard"), which operate prominent interbank networks for ATMs. (*See* D.I. 19 at 2) Those networks allow customers to use ATMs at banks other than their own. (*Id.*)

(internal quotation marks omitted) In Bush's view, that conduct has caused him and other consumers financial injury. (*See id.*) For example, Bush believes he "has been injured in the loss of time, development investment and opportunity cost." (*Id.*) To further explain the existence of a "conspiracy," Bush points to Triton's alleged breach of a mutual confidentiality agreement. (*See id.* at 16-19) After the parties signed that agreement in April 2020, Triton shared "high level" information about Bush's proposed ATM features with an unidentified sponsor bank. (*See id.* at 17)

The second "Court Identified Amendment Response" addresses the "monopolizing association of financial service companies restraining trade through rule making." (*Id.* at 20) Those "financial service companies" are Visa and Mastercard, which Bush believes "to be considered the same functional entity, simply operating under different corporate names." (*Id.*) Bush cites a 2020 case from the Supreme Court of the United Kingdom, which supposedly ruled that "Visa and Mastercard are operating as a monopoly fundamentally within the Federal Reserve Banking System." (*Id.*)[4]

In the final responsive section of the amended complaint, Bush alleges Triton violated a provision of the Clayton Act regarding acquisitions of stock. (*Id.* at 21-22) Bush believes that "individuals within or associated with Triton and Cardtronics" are coordinating "to maintain their monopolistic power grip on the financial services industry as a whole." (*Id.*) Bush further alleges that "Cardtronics is Triton['s] largest client by far," and "it would be smart to own all or part of your equipment manufacturer." (*Id.*)

---

[4] During the briefing on Triton's motion to dismiss the original complaint, Bush filed a motion to join Visa and Mastercard to this case. (*See generally* D.I. 16) The Court denied that motion, concluding that the complaint did not contain plausible allegations to pursue antitrust claims against either entity. (D.I. 19 at 11)

3

## LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material factual allegations in the operative complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Therefore, the Court may grant such a motion to dismiss "only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

When a plaintiff proceeds *pro se*, his pleadings are liberally construed, so the Court holds such a complaint – even if "inartfully pleaded" – to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept "bald assertions" as true. *Morse v. Lower Merion*

4

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted). Nor is it obligated to credit "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). The Court may likewise reject allegations that are "self-evidently false." *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

### I. Motion to Dismiss

The Court understands Bush to be raising claims under the following statutory provisions: (i) Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) Section 2 of the Sherman Act, 15 U.S.C. § 2; and (iii) Sections 7 & 8 of the Clayton Act, 15 U.S.C. §§ 18 & 19. Even liberally construing the amended complaint, the Court concludes that Bush has not plausibly alleged any violations. Nor has Bush adequately stated a claim for breach of the parties' mutual confidentiality agreement.

### A. Sherman Act Section 1

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "every contract . . . or conspiracy, in restraint of trade or commerce." To state a claim under Section 1 of the Sherman Act, a plaintiff must allege (1) an agreement, contract, combination, or conspiracy, (2) imposing an unreasonable restraint of trade within a relevant market, and (3) an accompanying antitrust injury. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314-15, 315 n.9 (3d Cir. 2010).

The Court previously concluded that the original complaint failed to allege an agreement or conspiracy between Triton and either the sponsor bank or Cardtronics. (D.I. 19 at 8-9) The same issue afflicts the amended complaint. Because Triton turned to a sponsor bank for "high level" guidance about the Visa and Mastercard rules and "scrip" transactions, Bush alleges a "conspiracy that goes beyond the ordinary course of business conversation." (Am. Compl. at 19)

5

This contention was foundational to Bush's original complaint, and the Court expressly rejected it. (D.I. 19 at 8) ("The complaint does not plausibly allege any agreement or conspiracy between Triton and the sponsor bank that goes beyond an ordinary business conversation.") Bush fares no better by repeating the contention in his amended complaint.

Bush's "Court Identified Amendment Responses" do not allege any additional facts that might support an agreement or conspiracy between Triton and Cardtronics. Bush's assertion of an "agreement and conspiracy between the Defendants" is unsupported and conclusory. (*See, e.g.*, Am. Compl. ¶ 86) Bush has again failed to plausibly plead facts to support an inference that Triton is part of an agreement or conspiracy that would potentially contravene the Sherman Act. *See Iqbal*, 556 U.S. at 678.

Accordingly, Bush has failed to state a claim on which relief may be granted under Section 1 of the Sherman Act.

### B. Sherman Act Section 2

Section 2 of the Sherman Act, 15 U.S.C. § 2, "requires '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306-07 (3d Cir. 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

In connection with the original complaint, Bush failed to allege that Triton willfully acquired or maintained any monopoly power; the Court found his allegations about a monopoly in the ATM industry were wholly unsupported by details. (D.I. 19 at 10) The amended complaint fares no better.

Bush asserts that Triton and the unidentified sponsor bank "operate[d] in coordination

together within the financial services industry to monopolize an unfair advantage, inflicting financial injury to the consumers of Credit Card Cash Advances." (Compl. at 16) According to Bush, "[t]his monopoly restriction is happening so that the top tier lenders of the credit card industry can make [exorbitant] and usury interest rates on 'cash advances' without the possibility of early repayment by the customer." (*Id.*) (emphasis omitted) Because there are no specific allegations concerning the alleged monopoly, Bush's claim fails to meet the pleading standards. *See Iqbal*, 556 U.S. at 664 ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

Accordingly, Bush has failed to state a claim on which relief may be granted under Section 2 of the Sherman Act.

### C. Clayton Act

On the motion to dismiss the original complaint, the Court was unable to discern plausible allegations of conduct proscribed by the Clayton Act, such as price discrimination or exclusive dealings. (D.I. 19 at 10-11) Liberally construed, the original complaint may have been alleging interlocking directorates (Clayton Act Section 8), if Bush could identify individuals at Triton and Cardtronics who overlap. It also may have been alleging unlawful stock acquisition (Clayton Act Section 7), if Bush could allege that Cardtronics or any other company owns Triton stock (or vice versa). (D.I. 19 at 11; *see also* 15 U.S.C. §§ 18 & 19; *United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 135 (D. Del.), *vacated as moot*, 2020 WL 4916824 (3d Cir. July 20, 2020))

In the amended complaint, Bush has not rectified the deficiencies. Rather, Bush again

7

"seeks discovery to further uncover whom the hidden individuals are." (Am. Compl. at 21) Bush's allegations are admittedly based only on "insider gossip and suspicious circumstance correlations." (*Id.*) Bush has not alleged facts to make out a plausible claim. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Bush requests to proceed with discovery but "offers no explanation of why it is plausible that such facts **may** be uncovered in discovery." *Sapp v. Premier Educ. Grp., LP*, 2016 WL 6434137, at *8 (D.N.J. Oct. 28, 2016) (internal quotations marks omitted). Rather, Bush has a hunch that, because "Cardtronics is Triton['s] largest client by far," a smart "business investment strategy" would be "to own all or part of your equipment manufacturer." (Am. Compl. at 21) Bush must allege a plausible claim before subjecting Triton to the costs of discovery. *See Twombly*, 550 U.S. at 559-60 (explaining that pleading standards help to "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence") (internal quotation marks and brackets omitted). As he has failed to do so, Bush is not entitled to take discovery.

Accordingly, Bush has failed to state a claim on which relief may be granted under the Clayton Act.

### D. Breach of Contract

Under Delaware law,[5] to state a claim for breach of contract, a party must show: (i) "the existence of the contract, whether express or implied"; (ii) "the breach of an obligation imposed

---

[5] The mutual confidentiality agreement is "governed by and construed in accordance with the laws of the State of Delaware, USA." (D.I. 5 Ex. A at 2)

8

by that contract"; and (iii) "the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Bush has not adequately stated a claim for breach of contract.

Bush has satisfactorily pled the existence of a contract, namely the "Mutual Confidentiality Agreement" from April 2020. (*See generally* D.I. 5 Ex. A) Bush has not, however, adequately alleged a breach. Bush contends that Triton breached the confidentiality agreement "by not disclosing the unidentified sponsor bank" with which Triton discussed the feasibility of Bush's ticket-for-cash proposal. (Am. Compl. at 18) (internal quotation marks omitted) But no provision in the mutual confidentiality agreement imposes an obligation on Triton that it is plausibly alleged to have breached.[6] Moreover, Bush has explicitly conceded that Triton has been released from its confidentiality obligations with respect to Bush's business plans. Bush acknowledges that "filing his provisional patent application with the [U.S. Patent and Trademark Office], and discussing his business development idea and plan with Mastercard directly . . . generally ***nullifies*** Triton['s] prior obligation of 'confidential information' of the material submitted into evidence with this court." (D.I. 23 at 1-2) (emphasis added)

---

[6] Bush and Triton generally agreed not to disclose each other's confidential information. (D.I. 5 Ex. A § 1) Confidential information does not include information that "is in the public domain at the time of disclosure or ***later enters the public domain*** through no fault of the receiving party." (*Id.* § 3(i)) (emphasis added) Thus, a receiving party "shall have no obligation with respect to" publicly disclosed information, even if it was confidential at the time of disclosure. (*See id.*) Further,

> If a receiving party becomes compelled by law, judicial or administrative process or by governmental authority to disclose any CONFIDENTIAL INFORMATION, the receiving party will provide the disclosing party with prompt written notice thereof so that the disclosing party may seek a protective order or other remedy the disclosing party deems appropriate.

(*Id.* § 2)

9

Additionally, Bush's business plans entered the public domain when he included those plans in documents filed on the Court's docket. (*See generally* D.I. 2, 5, 20)

The Court cannot "rewrite [a] contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010). Taking all allegations in the amended complaint as true, Bush has not plausibly alleged that Triton breached any provision of the confidentiality agreement. Accordingly, Bush has failed to state a breach-of-contract claim on which relief may be granted.

## II. Leave to Amend

After the original complaint was dismissed, the Court provided Bush with an opportunity to amend in order to cure any pleading defects. (D.I. 19 at 12 & n.9) As explained above, Bush failed to cure those defects, and his new allegations suffer from additional defects. Bush states that, "[i]f there is an additional technical deficiency in [his] pleadings," he "requests further specification from the court and leave to amend his complaint." (D.I. 25 at 6) The Court cannot provide legal advice to Bush, and it perceives no reason to give him yet another chance to amend. Instead, his two failed efforts lead the Court to conclude that amendment would be futile. Thus, dismissal of the amended complaint is with prejudice.[7]

## III. Motion for Consideration

After briefing on the instant motion to dismiss was complete, Bush filed another motion, alternatively styled as a "motion for consideration" or a "motion explicative." (D.I. 26) Attached to that motion is an email exchange between Bush and a representative of nonparty Genmega, Inc. containing references to nonparties "CDS" and "PAI." That exchange is

---

[7] Because Triton seeks dismissal with prejudice, Bush asks the Court "to sanction defense counsel" for "baseless insult and contempt." (D.I. 23 at 5) Bush's request for sanctions is unfounded and, therefore, denied.

10

irrelevant to any allegations against Triton, the only named defendant in this case. Moreover, because the Court is granting Triton's motion to dismiss with prejudice and this case will be closed, the motion is now moot. Accordingly, the motion is denied.

## CONCLUSION

For the foregoing reasons, Triton's motion to dismiss (D.I. 21) is granted, Bush's motion for consideration (D.I. 26) is denied, and the Clerk of Court is directed to close this case.

December 7, 2021  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT